IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED

KAY HASSMAN,

04 SEP 21 AM 11:27

Plaintiff,

CLERK-LAS CRUCES

v.                                              CIV 03-246 LAM

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion to Reverse and Remand for Payment of Benefits or in the Alternative, for a Rehearing *(Doc. 14)*. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion and the memorandum in support of the motion *(Doc. 15)*, Defendant's response to the motion *(Doc. 16)*, Plaintiff's reply to the response *(Doc. 17)* and relevant law. Additionally, the Court has carefully reviewed and considered the entire administrative record (hereinafter, "Record" or "R"). For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED IN THE ALTERNATIVE, FOR A REHEARING** and the case **REMANDED** to Defendant for further proceedings consistent with this Memorandum Opinion and Order.

### I. Procedural History

Plaintiff, Kay Hassman, filed applications for Disability Insurance Benefits and Supplemental Security Income on October 29, 1999. *(R. at 83-85, 239-241.)* In connection with

her applications, she alleged a disability since January 3, 1997, due to Epstein-Barr virus, Lupus, Chronic Fatigue Immune Dysfunction Syndrome (hereinafter "CFS") aching and burning joints, energy and stamina loss, and nausea. *(R. at 92.)* Plaintiff's applications were denied at the initial and reconsideration levels. *(R. at 68, 69, 70-73, 75-77.)*

The Administrative Law Judge (hereinafter "ALJ") conducted a hearing on June 28, 2001. *(R. at 32-67.)* Plaintiff was represented at the hearing by an attorney. *(R. at 32.)* On August 27, 2001, the ALJ issued his decision in which he made the following findings, *inter alia*, with regard to Plaintiff pursuant to the sequential analysis set forth in 20 C.F.R. § 404.1520: (1) claimant meets the disability requirements for a period of disability and Disability Insurance Benefits and is insured for benefits through March 31, 2001; (2) claimant has not engaged in substantial gainful activity since the alleged onset of disability; (3) claimant has a combination of impairments considered "severe"; (4) these medically determinable impairments do not meet or medically equal one of the listed impairments; (5) claimant's allegations regarding her limitations are not totally credible; (6) all medical opinions in the record were carefully considered regarding the severity of claimant's impairments; (7) claimant has the residual functional capacity for the performance of "sedentary" work; (8) claimant's past relevant work as an accounts clerk did not require the performance of work-related activities precluded by her residual functional capacity; (9) claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision. *(R. at 19-20.)*

After the ALJ issued his decision on August 27, 2001, Plaintiff filed a request for review. *(R. at 11, 247-252.)* On October 25, 2001, Plaintiff submitted additional evidence to the Appeals Council. *(R. at 247-273.)* On January 17, 2003, the Appeals Council issued its decision denying

Plaintiff's request for review *(R. at 8-9)*, making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently filed her complaint for court review of the ALJ's decision on February 24, 2003. *(Doc. 1.)*

## II. Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Sec'y of Health & Human Services*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F. 2d 407, 414 (10th Cir. 1983) (further citation omitted)). Substantial evidence is more than a mere scintilla of evidence but less than a preponderance. *See, e.g., Sisco v. U.S. Dep't of Health & Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).

A claimant has the burden of proving his or her disability, which is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993); 42 U.S.C. § 423(d)(1)(A). The Secretary has established a five-step process for evaluating a disability claim. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that she is not engaged in substantial gainful employment; she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. §§ 404.1520 and 416.920. *See Reyes*

*v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity (hereinafter "RFC"), age, education, and prior work experience. *See Gatson v. Bowen*, 838 F.2d 442, 446 (10th Cir. 1988).

### III. Plaintiff's Age, Education, Work Experience and Medical History

At the time of the hearing, Plaintiff was thirty-two years old. *(R. at 16, 36.)* She completed high school and college, receiving a degree in elementary education. *(R. at 37.)* During the fifteen year period prior to the ALJ's decision, Plaintiff worked as an assistant to a secretary, a substitute teacher, and an accounts clerk. *(R. at 38, 93.)*

Plaintiff's medical records indicate she required a blood transfusion and emergency surgery following a gynecological procedure in July, 1994. *(R. at 154-156, 158, 169.)* Plaintiff complained of a lack of energy, tiredness, and nausea beginning in July, 1996 when she consulted a nurse practitioner for these symptoms. *(R. at 206.)* Medical records indicate that specific seriodiagnostic tests for Epstein-Barr virus and ANA (antinuclear antibody) were performed in July, 1996 *(R. at 200-204.)*, with results that were consistent with an old infection. *(R. at 213.)* No specific treatment was prescribed other than rest when experiencing a "flair up." *(R. at 195.)* Although the medical records do not indicate Plaintiff was under the care of a physician[1], she had blood tests performed in May, 1998 and August, 1999, which revealed mildly elevated IgG titer, and a high titer for antinuclear antibody. *(R. at 196-199, 213.)*

Medical records indicate that Plaintiff next consulted a physician on January 25, 2000 when Nicholas Nillo, M.D. performed a one-time evaluation/consultation. *(R. at 213-219.)* Dr. Nillo's

---

[1] The blood tests were ordered by and reports delivered to Randy Lenhardt, CNP at the Family First Medical Center. *(R. at 196-199.)*

4

impression of Plaintiff was that despite subjective reports of fatigue, generalized weakness, and myalgias, "[n]o objective evidence of significant functional impairment was detected at the time of this exam." *(R. at 216.)* The only positive findings by Dr. Nillo were enlarged lymph nodes in the anterior cervical regions just below the mandible, which he noted, "may be present in various infectious conditions, including Epstein-Barr virus infection." *(R. at 216.)* Dr. Nillo stated that "the claimant's symptoms, to a large extent, may be stress-related and consideration for a neurological or psychiatric evaluation may be given." *(R. at 216.)*

From July, 2000 through July, 2002, Plaintiff consulted with physicians at La Clinica de Familia on a semi-regular basis. *(R. at 222, 232, 236, 254, 255, 268.)* Plaintiff saw Gregory Johnson, M.D. on July 7, 2000 and complained of loss of stamina, lethargy, nausea, and burning of her neck and back when sitting for long periods. *(R. at 222.)* On May 4, 2001, Plaintiff saw Frank Crespin, M.D. and reported she was incapacitated by fatigue. *(R. at 236.)* Dr. Crespin noted that the results of lab work done on July 7, 2000 were all normal. *(R. at 236.)* At this visit, Plaintiff told Dr. Crespin she had an upcoming disability hearing and requested a note stating she was unable to work due to illness. *(R. at 236.)* On May 21, 2001, Dr. Crespin filled out a Chronic Fatigue Syndrome RFC Questionnaire indicating Plaintiff "probably" has CFS. *(R. at 227.)* But Dr. Crespin failed to complete the questions concerning specific physical limitations, noting they were "not answerable based on my limited contact with the patient. Most of her reported incapacity is based on her fatigue which is subjective symptomology." *(R. at 231.)*

Plaintiff continued to consult Dr. Crespin with visits on May 21, 2001, September 21, 2001, January 15, 2002, and July 16, 2002. *(R. at 232, 254, 255, 268.)* Dr. Crespin noted that Plaintiff continued to complain of the same symptoms (fatigue, muscle pain, difficulty sleeping) with no

5

significant improvement and the treatment plan was to continue supportive care, encourage cardiovascular exercise as tolerated, and to take naproxen[2] for diffuse myalgias. *(R. at 254, 255, 268.)* On October 19, 2001, Dr. Crespin filled out a second Chronic Fatigue Syndrome RFC Questionnaire and again failed to complete the questions concerning Plaintiff's physical limitations. *(R. at 259-260.)* However, this time Dr. Crespin stated that Plaintiff does have CFS based on the Centers for Disease Control criteria *(R. at 256.)*, and supplemented the questionnaire with a letter briefly setting forth Plaintiff's medical history and symptoms. *(R. at 262.)*

## IV. Discussion/Analysis

The ALJ denied Plaintiff benefits at step four of the five-part sequential analysis for determining disability, finding that Plaintiff has an RFC for "sedentary" work and can return to her past relevant work as an accounts clerk. *(R. at 20.)* At step four, claimant has the burden of proving her disability, which is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. *Thompson*, 987 F.2d at 1486.

Plaintiff alleges the ALJ made three errors in denying her claims for benefits because the decision is not supported by substantial evidence and the Commissioner failed to apply correct legal standards. *(Doc. 15.)* Specifically, Plaintiff argues that the ALJ: (1) did not properly consider Plaintiff's CFS because he relied on a lack of objective medical evidence; (2) failed to properly

---

[2]Naproxen is in a class of drugs called nonsteroidal anti-inflammatory drugs (NSAIDS). Naproxen works by reducing hormones that cause inflammation and pain in the body. Naproxen is used to reduce pain, inflammation, and stiffness caused by many conditions. *(WebMD).*

6

consider the effects of CFS in assessing Plaintiff's RFC; and (3) erred in finding Plaintiff could perform her past relevant work. *(Doc. 15.)*

Defendant argues that the ALJ applied the correct legal standards and his decision that Plaintiff was not disabled is supported by substantial evidence. *(Doc. 16.)*

### A. ALJ Properly Evaluated Severity of CFS

Plaintiff alleges the ALJ failed to properly evaluate her CFS because he based the decision on the lack of objective medical evidence. *(Doc. 15 at 7-9)* The Court disagrees that the ALJ relied only on a lack of objective medical evidence in reaching his conclusion that Plaintiff is not disabled. The ALJ found that Plaintiff's condition has been diagnosed alternatively to be chronic fatigue syndrome, fibromyalgia, Epstein-Barr virus, and/or the residual effects of mononucleosis and found the manifestations of these impairments, singularly or in combination, to be "severe" with the meaning of the regulations. *(R. at 17.)* But he also found that this combination of impairments is not severe enough to meet or medically equal one of the listed impairments. *(Id.)* Therefore, the issue here is the severity of Plaintiff's condition, not its existence.

In *Social Security Ruling 99-2P*, the agency states that the Social Security Act and implementing regulations require that an individual establish disability based on the existence of a medically determinable impairment; i.e., one that can be shown by medical evidence, consisting of medical signs, symptoms, and laboratory findings. *Social Security Ruling 99-2P*, 1999 WL 271569 (S.S.A.) at *1. Disability may not be established on the basis of an individual's statement of symptoms alone. *Id.* The Centers for Disease Control ("CDC") have developed case criteria for identifying CFS but these criteria are based on a patient's complaints as reported to a health care provider and, therefore, are insufficient alone to satisfy Social Security requirements. *Id.*

7

The Commissioner has established a policy for evaluating claims based on CFS, which states:

> CFS is characterized by the presence of persistent unexplained fatigue and by the chronicity of other symptoms. The most prevalent symptoms include episodes of low-grade fever, myalgias, headache, painful lymph nodes, and problems with memory and concentration. These symptoms fluctuate in frequency and severity and may be seen to continue over a period of many months. Physical examinations may be within normal limits. **Individual cases must be adjudicated on the basis of the totality of the evidence**, including clinical course from the onset of the illness, symptoms, signs, and laboratory findings. Consideration should be given to onset, duration, severity and residual functional capacity following the sequential evaluation process.

Program Operations Manual System § DI 24515.075 (emphasis added).

The ALJ evaluated Plaintiff's activities to determine how severely she was affected. *(R. at 18, 107-112.)* He noted the prolonged gap in medical care from 1996 to 2000.[3] *(R. at 17.)* He considered nurse practitioner Randy Lenhardt's evaluation in July, 1996, followed by a three and a half year gap before she had a consultative examination in January, 2000. *(R. at 17.)* The ALJ considered the January, 2000 consultative examination of Nicholas Nillo, M.D. and his finding that Plaintiff exhibited no objective evidence of significant functional impairment. *(R. at 18, 216.)* He noted that Plaintiff admitted she took only over-the-counter medication for pain and her only prescription medicine was Elavil.[4] *(R. at 18.)* The ALJ considered Dr. Crespin's failure to complete the physical limitations portion of the RFC questionnaires in May, 2001 and October, 2001 because of limited contact with Plaintiff. *(R. at 18, 231, 259-260.)* And Dr. Crespin's repeated indications

---

[3] During this period, Plaintiff did consult a physician for regular gynecological exams. *(R. at 181, 182, 183.)*

[4] Elavil (amitriptyline) is in a class of drugs called tricyclic antidepressants. Amitriptyline affects chemicals in the brain that may become unbalanced and cause depression. Amitriptyline is used to relieve symptoms of depression such as feelings of sadness, worthlessness, or guilt; loss of interest in daily activities; changes in appetite; tiredness; sleeping too much; insomnia; and thoughts of death or suicide. Amitriptyline is also sometimes used to treat certain types of pain. *(WebMD).*

that Plaintiff's assertions regarding her level of incapacitation were based solely on her own subjective reports. *(R. at 18-19, 229, 231, 235, 262.)* After considering Plaintiff's activities and these other relevant factors, the ALJ determined that Plaintiff's condition has not imposed limitations which preclude her from the minimal exertional demands of "sedentary" work. *(R. at 19.)*

Reasonable people could differ on the proper decision here, but it was the ALJ's job to evaluate and weigh the evidence. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). He considered the absence of objective medical evidence, as he was required to do, but he did not give that absence controlling weight. The Court finds there was substantial evidence to support the ALJ's decision regarding the severity of Plaintiff's CFS.

## B. Evaluation of Residual Functional Capacity and Ability to Perform Past Relevant Work

Plaintiff alleges the ALJ failed to properly consider the effects of CFS in assessing Plaintiff's RFC and also erred in finding Plaintiff could perform her past relevant work. *(Doc. 15.)* The Court agrees and combines the analysis of these issues as Plaintiff's capacity to perform her past relevant work is necessarily determined by her residual functional capacity. The ALJ should assess RFC at step four and must make specific findings as to a claimant's RFC. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). These findings must be supported by substantial evidence. *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. § 404.1545." *Social Security Ruling 96-8p*, 1996 WL 374184, at *1. Therefore, the ALJ must assess the "physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing,

9

pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)." 20 C.F.R. §404.1545(b).

In this case, in determining Plaintiff's RFC, the ALJ states:

> I am not persuaded that Ms. Hassman's condition has imposed limitations which preclude her from the minimal exertional demands of "sedentary" work. Ms. Hassman went for a number of years with no medical treatment. The consultative examiner could find no evidence of functional impairment. At the time of that examination, Ms. Hassman admitted to doing housework, shopping; and assisting her mother with teaching related work for two or three hours at a time (Exhibit 7F3). Her treating physician can offer no more than her own statements as support to her level of limitation. I cannot consider Ms. Hassman's subjective complaints to be supported by the objective medical evidence, and am, thus, unable to fully credit them. In the absence of objective medical evidence to the contrary, I must conclude that she retains a residual functional capacity for the performance of at least "sedentary" work.

*(R. at 19.)* This RFC finding does not contain the required function-by function assessment based on all the relevant evidence. *See SSR 96-8p* at *3-4; *Southard v. Barnhart*, 72 Fed. Appx. 781, 784, 2003 WL 21733145 (10th Cir. (Okla.)) (July 28, 2003) (unpublished); *Jesse v. Barnhart*, 323 F.Supp. 2d 1100, 1109-1110 (D. Kan. 2004).

The ALJ erroneously decided Plaintiff retains the RFC for sedentary work without supporting his findings with substantial evidence. *Haddock*, 196 F.3d at 1088. Because there are no documents in the record that contain specific RFC findings or functional restrictions, the ALJ had none to include. The agency medical consultants that made the Initial Disability Determination *(R. at 68, 70-73.)* and the Reconsideration Disability Determination *(R. at 69.)* made no RFC findings. The consultative examiner, Dr. Nillo, notes only subjective reports of limitations by Plaintiff and that "[n]o objective evidence of significant functional impairment was detected." *(R. at 216.)* Plaintiff's treating physician, Dr. Crespin, twice avoids completing the questions concerning

10

functional limitations in CFS RFC questionnaires. *(R. at 227-231, 256-261.)* Therefore, no doctor has defined Plaintiff's capability for walking, standing, sitting, lifting, carrying, pushing, pulling, etc. There is a lack of evidence about what she can do, except for her own testimony, which the ALJ rejected. *(R. at 19.)* None of Plaintiff's doctors has defined either the level of exertion that she can perform or the limitations, if any, on her movement or posture due to CFS. For these reasons, the ALJ had no evidence to support his finding that Plaintiff retains the RFC for sedentary work.

The regulations expressly require the ALJ to "make every reasonable effort to ensure that the file contains sufficient evidence to assess the RFC." *SSR 96-8p* at *5. And because a disability hearing is nonadversarial, an ALJ is obligated to develop the record even where, as here, the claimant is represented by counsel. *Thompson*, 987 F.2d at 1492. Finding no substantial evidence upon which to base an RFC finding, the ALJ should have recontacted Plaintiff's physician. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001). If additional records either do not exist or are insufficient to clarify the inconclusive evidence already in the record, then the ALJ should order a consultative examination. *See* 20 C.F.R. §§ 404.1512(f), 404.1519A(A)(1).

Because the ALJ failed to make all the detailed findings required by the regulations and rulings at step four, the RFC conclusions are not supported by substantial evidence. Absent a proper RFC assessment, a decision on Plaintiff's ability to return to her past relevant work cannot be made. On remand, the ALJ should make detailed findings as required by *Social Security Ruling 96-8p* in his RFC assessment. If necessary, the ALJ should recontact Plaintiff's physicians or order a consultative examination to obtain the required information regarding Plaintiff's functional limitations.

## V. Conclusion

Because the ALJ failed to make detailed findings in his assessment of Plaintiff's RFC and failed to properly develop the record, Defendant failed to make a proper step four finding. Therefore, this case must be remanded to the Commissioner for further proceedings, including a re-hearing and further development of the record, in accordance with this Memorandum Opinion and Order. Reevaluation of the severity of Plaintiff's CFS will also be required by further development of the record.

Based on the foregoing, the Court will grant Plaintiff's motion in the alternative, and remand this case to the Commissioner for further proceedings, including a re-hearing, further development of the record, and reevaluation of the severity of Plaintiff's CFS, consistent with this Memorandum Opinion and Order.

**WHEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand for Payment of Benefits or in the Alternative, for a Rehearing *(Doc. 14)* is **GRANTED IN THE ALTERNATIVE, FOR A REHEARING** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_Lourdes Martinez_
LOURDES A. MARTÍNEZ
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**